IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1917-06







RAUL ADAM MARTINEZ JR., Appellant


v.


THE STATE OF TEXAS






ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FROM THE THIRTEENTH COURT OF APPEALS

HARRIS COUNTY




 Price, J., filed a concurring opinion.


CONCURRING OPINION


 This case was tried over a year before the Supreme Court issued its opinion in Missouri
v. Seibert. (1) The appellant's brief in the court of appeals was filed a week before Seibert. (2) The
court of appeals's resolution of the appellant's only claim on appeal was thus hampered by a
record that was developed in anticipation of a Supreme Court opinion, rather than in light of
already-established Supreme Court precedent. There is no claim that the issue was not properly
preserved for appeal, however, and Seibert would apply retroactively to any case pending on
direct appeal, as this one was. (3) Once a defendant has shown that his statement was made as a
result of custodial interrogation, (4) the State has the burden to establish compliance with Miranda. (5) 
I do not know whether that burden should extend to disproving circumstances that precede the
Miranda warnings that might suffice, in contemplation of Seibert, to call the efficacy of those
warnings into doubt. I am, therefore, not entirely unsympathetic with Judge Hervey's view of
matters. However, the State itself has never complained that it has been saddled with an
inappropriate burden of proof in this case. In any event, even were we to hold that the burden
more appropriately falls upon the appellant to prove circumstances that would impugn the
efficacy of otherwise valid Miranda warnings, I believe that on the record before us it can be
said that he has carried that burden, if only barely.

 The debate in the court of appeals centered around which of the opinions in Seibert was
the controlling one, the plurality opinion of Justice Souter or the narrower concurring opinion
of Justice Kennedy. Applying the Souter plurality as authoritative, the majority of the court of
appeals held that the appellant had failed to show that the pre-Miranda contact with the police,
including the polygraph, undermined the effectiveness of the Miranda warnings. (6) Applying the
Kennedy concurrence, which she deemed controlling, the dissenting justice would have held that
the police deliberately failed to Mirandize the appellant before subjecting him to the polygraph
examination, and took no curative measures to assure the efficacy of the subsequent warnings. (7) 
Without expressly resolving (or even addressing) this dispute in the lower court, the Court today
simply declares Justice Kennedy's view of the law "persuasive," and seems to adopt it. I agree
that we do not need to reach the issue of which opinion is controlling, since, in my view, the
appellant should prevail under either test.

 As both Judge Hervey and the court of appeals point out, we know almost nothing on the
present record about the substance of the initial interrogation or the polygraph examination. 
Assuming for the sake of argument that the burden rests with the defendant, ordinarily this gap
in the record would prove fatal to a Seibert claim, which on its face is predicated upon the fact
that the police obtained a presumptively coerced confession before Mirandizing the suspect. 
Here, what little the record does reveal about the appellant's pre-Miranda contact with police
is that he steadfastly denied any involvement in the offense until after he was warned. But the
record also shows that, after he submitted to the polygraph examination, the appellant was
immediately informed that he had failed it. We do not know specifically in what respect his
answers may have been deceptive, but we can be sure that the police told him they knew of his
deception in an effort to wear down his resistance to confessing to them, by demonstrating to him
that they already "had the goods" on him. (8) To me, this is the determinative circumstance in this
case. It satisfies both the Souter and the Kennedy criteria for establishing an ineffective mid-interrogation Miranda warning.

 In explaining why warnings given after a confession has already been elicited may not
serve as the constitutionally adequate prophylaxis that Miranda envisioned, Justice Souter
observed:

 After all, the reason that question-first is catching on is as obvious as its manifest
purpose, which is to get a confession the suspect would not make if he understood
his rights at the outset; the sensible underlying assumption is that with one
confession in hand before the warnings, the interrogator can count on getting its
duplicate, with trifling additional trouble. Upon hearing the warnings only in the
aftermath of interrogation and just after making a confession, a suspect would
hardly think he had a genuine right to remain silent, let alone persist in so
believing once the police began to lead him over the same ground again. A more
likely reaction on a suspect's part would be perplexity about the reason for
discussing rights at that point, bewilderment being an unpromising frame of mind
for knowledgeable decision. What is worse, telling a suspect that "anything you
say can and will be used against you," without expressly excepting the statement
just given, could lead to an entirely reasonable inference that what he has just said
will be used, with subsequent silence being of no avail. (9)


The same "sensible underlying assumption" pertains to the interrogator's use of a failed
polygraph. A suspect who has been interrogated and confronted with the fact that his denials did
not pass a lie-detector test would not likely appreciate his right to remain silent, even once
Miranda warnings are administered, when the police begin to "lead him over the same ground"
with respect to which his mendacity has already been revealed. This is especially so if the tardy
Miranda warnings cause him reasonably to believe that evidence of his mendacity on the
polygraph examination can and will be used against him. A failed polygraph is practically as
effective as a coerced confession in so demoralizing a suspect that subsequent Miranda warnings
will lack their intended efficacy. I agree with the Court that, given the continuity of the
appellant's interrogation and his interrogators, (10) "a reasonable person in [his] shoes would not
have understood [mid-stream Miranda warnings] to convey a message that [he] retained a choice
about continuing to talk." (11)

 Justice Kennedy would require that the use of the question-first tactic was a deliberate
choice of the police interrogators. The police waited more than six hours after questioning had
begun to take the appellant to the magistrate to have him Mirandized. But they had him
Mirandized immediately after informing him that he had failed the polygraph. It is fair to infer
from these circumstances that the whole day's interrogation up to that point had been aimed
either at eliciting a pre-Miranda confession that they could then have him repeat, or at
demoralizing him to the point that a post-warning confession would be forthcoming. Indeed, it
is hard to imagine what else could explain the lengthy delay in Mirandizing him after he was
plainly under arrest and the police obviously desired to, and did in fact, question him about the
offense. The Court is justified in its de novo conclusion that the police utilized a deliberate
tactic, calculated to undermine the appellant's will to resist talking before Miranda warnings
could steel his resolve. (12)

 Both Justice Souter and Justice Kennedy would look to see whether some curative
measures may have been taken. (13) I agree with the Court that there was no meaningful break in
the time or circumstances of the day-long interrogation sequence such that the demoralizing
effects of the appellant's learning he had failed the polygraph examination would have worn off. 
Nor was the appellant informed as part of the Miranda warning he eventually received that
failing the polygraph examination was not a circumstance that could be used against him at his
trial (both because it came prior to any Miranda warnings and because the results of polygraph
examinations are deemed generally too unreliable to be admissible in criminal trials in Texas). 
Because no such ameliorating circumstances exist, I conclude, like the Court, (14) that the Miranda
warnings "could [not] have served their purpose," (15) and that the appellant's confession therefore
should have been suppressed.

 With these additional observations, I join the Court's opinion.

Filed: December 17, 2008

Publish
1. 542 U.S. 600 (2004).
2. See Martinez v. State, 204 S.W.3d 914, 924 n.19 (Tex. App.--Corpus Christi 2006) (Yanez, J.,
dissenting).
3. Griffith v. Kentucky, 479 U.S. 314 (1987).
4. See Herrera v. State, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (State has no burden to show
Miranda compliance unless record "clearly establishes" defendant's statement was product of custodial
interrogation). Here, it is undisputed that the appellant was under arrest from the outset of his interaction
with the police, and any inquiry of the appellant about the offense by the police after that, including during
the polygraph examination, unquestionably constituted interrogation.
5. See Miranda v. Arizona, 384 U.S. 436, 478 (1966) (statements made during custodial interrogation
are inadmissible "unless and until [Miranda] warnings and waivers are demonstrated by the prosecution
at trial[.]); Colorado v. Connelly, 479 U.S. 157, 167-68 (1986) (State has burden to show waiver of
Miranda rights).
6. Martinez v. State, supra, at 918-921.
7. Id. at 924-28.
8. Judge Hervey complains that the record does not indicate whether the appellant was Mirandized
at the outset of the polygraph examination. Dissenting opinion, at 10 n.18. It is undisputed that the
appellant was under arrest when he submitted to the polygraph examination, the quintessence of police
interrogation. The State therefore had the burden to prove he had been Mirandized at this juncture. See
n.5, ante. A silent record on this point must militate against the State.
9. Seibert, supra, at 613.
10. Majority opinion, at 15-16.
11. Seibert, supra, at 617.
12. There is no dispute about the historical facts. Neither is there any application of law to fact that
turns on the demeanor or credibility of Officer Sosa, the only witness at the suppression hearing. Although
the facts were not as well developed as could be hoped for, the facts that were elicited were essentially
unchallenged. Thus, the reviewing courts may review the question of the efficacy of the mid-stream
Miranda warning de novo. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).
13. See Seibert, supra, at 616 (plurality opinion) (Seibert's interrogating officer, in administering
Miranda warnings, "said nothing to counter the probable misimpression that the advice that anything
Seibert said could be used against her also applied to the details of the inculpatory statement previously
elicited. In particular, the police did not advise that her prior statement could not be used."); id. at 622
(Kennedy, J., concurring) ("For example, a substantial break in time and circumstances between the pre-warning statement and the Miranda warning may suffice in most circumstances, as it allows the accused
to distinguish the two contexts and appreciate that the interrogation has taken a new turn. * * *
Alternatively, an additional warning that explains the likely inadmissibility of the pre-warning custodial
statement may be sufficient.")
14. Majority opinion, at 15-20.
15. Seibert, supra, at 617.